Harvey Amusement Company v. Commissioner. Avenal Theatre Company v. Commissioner.
Harvey Amusement Co. v. Commissioner
Docket Nos. 106568, 106569.
United States Tax Court
1942 Tax Ct. Memo LEXIS 34; 1 T.C.M. (CCH) 231; T.C.M. (RIA) 42654; 12/17/1942
*34 Stanley J. Cook, Esq., for the petitioners. Harry R. Horrow, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, J.: These consolidated proceedings involve a deficiency for the year 1938 in income taxes in the amount of $3,105.05 and excess profits taxes in the amount of $3,051.18, determined by the Commissioner against Avenal Theatre Company. The petitioner, Harvey Amusement Company, admittedly is liable as transferee for any deficiency determined herein against the transferor, Avenal Theatre Company. The petitioners allege that the Commissioner erred in determining that the Avenal Theatre Company realized in 1938 a profit of $24,256.40 on the sale of all of its assets. Findings of Fact The petitioner, Harvey Amusement Company, hereinafter referred to as Amusement, was, in 1938, a California corporation. Its principal office was in San Francisco, California, and its outstanding stock of 750 shares was owned in equal shares by J. A. Harvey and his two sons, N.V. and R. W. Harvey. The petitioner, Avenal Theatre Company, hereinafter referred to as Avenal, was, until its dissolution in 1938, a California corporation with 223 shares of stock outstanding. *35 Its principal place of business was in San Francisco. Amusement owned one-half of the outstanding stock of Avenal, as evidenced by certificates numbered 6 and 8 for 1 1/2 and 110 shares, respectively. The remaining half was held of record by B. A. Vecchiarelli, as evidenced by certificates numbered 7 and 9 for 1 1/2 and 110 shares, respectively. The father of Vecchiarelli and other members of his family claimed an interest in such stock by reason of having contributed funds for the purchase thereof. The above certificates numbered 6, 7, 8 and 9, endorsed in blank were held in escrow until after the transfer of the assets of Avenal hereinafter described by the Bank of America at San Francisco and its branch bank at Avenal, pursuant to an escrow agreement dated September 30, 1937 between Amusement and Vecchiarelli, as buyers, and Patridge and Moore, as sellers of the Avenal stock, the buyers being required under the agreement to pay $10,000 in monthly installments of not less than $200 plus interest on the decreasing balance and an indebtedness of the sellers to the Bank of America at Avenal in the amount of $4,200. Avenal owned and operated three motion picture theatres; The California *36 Theatre and Liberty Theatre, at Coalinga, and the Avenal Theatre at Avenal, California. H. V. Harvey was president and director and Vecchiarelli was vicepresident and director of the company. Except for differences of opinion as to policies with respect to the operation of the theatres, Vecchiarelli and the Harveys were on friendly terms. Neither made any attempt to acquire the stock held by the other in Avenal. In or about June, 1938, H. V. Harvey was informed by one J. Leslie Jacobs, a real estate broker, that he had a party who was interested in acquiring the theatres owned by Avenal and equipment therein. The prospective purchaser was United California Theatres, Inc., hereinafter referred to as United. United had made the offer to purchase the three theatres and equipment, the principal assets of Avenal, for $120,000, consisting of cash and the assumption of liabilities of Avenal through J. R. Saul, a real broker. Saul and Jacobs negotiated the deal between the parties involved. No direct negotiations between the Harveys or Vecchiarelli and United were had. One L. S. Hamm acted as attorney for United, Amusement and Vecchiarelli, and planned the method of carrying out the deal *37 and prepared all papers and documents required. Hamm, who was also the secretary of United, was first informed by Saul that United wanted to purchase the assets of Avenal, and that the deal would have to be made on that basis. Subsequently, Hamm talked to E. H. Emmick, the president of United, who confirmed the offer made to Saul as to the purchase of the theatres and instructed Hamm particularly that United would buy nothing but assets and not stock and wanted the guarantee of the individuals owning Amusement with respect to undisclosed liabilities of Avenal, if any. H. V. Harvey knew that United wanted to purchase the assets of Avenal and not its stock. The transfer of the Avenal theatres and equipment to United was effected as follows: The following letter addressed to Jacobs, dated June 22, 1938 and signed by H. V. Harvey, was delivered to Jacobs: We will sell our stock in the Avenal Theatre Co. for the sum of $35,458.45 cash. As of this date, contracts and notes payable, of this corporation, are in the amount of $55,541.55, which amount is to be assumed and paid by the purchasers of this stock, and any payments made on the above notes or contracts prior to the consummation *38 of this stock sale shall be added to the price of our stock. Current operating expenses are to be pro-rated as of the date of taking possession of these properties. It is further understood that we have no connections or dealings with the sale of the stock now held by Mr. B. A. Vecchiarelli. Any dealings with Mr. Vecchiarelli are outside this agreement. We understand that Mr. Vecchiarelli is to receive $29,000.00 for his stock, which does not, in any way, include any portion of the moneys now on hand in the theatre accounts, box office or petty cash accounts, it being understood that we will pay up all obligations against this corporation outside of the above notes and contracts. It is understood that this offer shall expire at 5:00 o'clock p.m. Thursday, June 23, 1938. B. A. Vecchiarelli and his father also signed a letter dated June 22, 1938, addressed and delivered to Jacobs, which letter is as follows: We will sell all of our stock in the Avenal Theatre Co., for the sum of $29,000.00 net cash to us, it being understood that we are not to pay you any commission but that we will pay an attorney's fee in the amount of $300.00 plus costs of dissolving the corporation, our share *39 of which shall not exceed $50.00. We are not to be required to pay any current bills or obligations of the Avenal Theatre Co. It is further understood that we shall have no interest in or right to participate in any pro-rations, money in bank, or current theatre receipts. It is understood that this option will expire at 5:00 o'clock p.m. Thursday, June 30, 1938. RV. BAV Minutes of a meeting of the board of directors of Avenal, consisting of H. V. Harvey, R. W. Harvey and B. A. Vecchiarelli, held on July 1, 1938, show that Vecchiarelli presented his written resignation as director and vice-president of Avenal and stated that "he had sold his stock in the corporation" and desired his resignation to be accepted at once. The minutes show that such resignation was accepted and Hamm was elected director to fill the vacancy on the board thus created and that one R. A. Soskin was also elected as director. Resolutions were adopted that the employment of Vecchiarelli as manager of the company's theatres be terminated at midnight July 14, 1938; that the authority theretofore given to Vecchiarelli to sign and endorse checks and drafts of the corporation and to withdraw funds from its bank accounts *40 be rescinded, effective at midnight July 14, 1938, and that the right granted Vecchiarelli to occupy as his domicile an apartment in the California Theatre building at Coalinga be extinguished at midnight July 14, 1938. To such minutes there is attached a written resignation, as vice-president and director of Avenal, dated July 1, 1938, signed by Vecchiarelli. This resignation was not presented at such meeting but was subsequently inserted in the minutes. The resignation was delivered to the City Title Insurance Company, hereinafter referred to as Title Insurance, as escrow agent on July 15, 1938 and had not been delivered to any other person prior to that time. As appears from the minutes of a meeting of the board of directors of Avenal, consisting of four members, held on July 5, 1938, H. V. Harvey as president, stated that the business of the meeting was the consideration of the proposal to dissolve the corporation and wind up its affairs and that all of the stock of Avenal was owned and held by Amusement. A written consent by Amusement to the dissolution of Avenal and the distribution of its assets was read. A resolution that the corporation's affairs be wound up and its assets *41 distributed and that the president and secretary take steps to that end was adopted. Although certificates numbered 7 and 9 issued to Vecchiarelli had not been surrendered to Avenal or the assignment of such certificates by Vecchiarelli to United, certificate No. 11 for 111 1/2 shares of stock of Avenal was issued to United under date of July 1, 1938, signed by H. V. Harvey, as president, and R. W. Harvey, as secretary. The certificate was endorsed in blank by United, by L. S. Hamm, Secretary. It was endorsed by Hamm in order to permit its cancellation and the reissuance of the 111 1/2 shares to Amusement. Under the same date another certificate No. 12 was issued to Amusement for 111 1/2 shares. The stub of certificate No. 11 shows the issuance of the certificate No. 11 as a transfer by Vecchiarelli of 111 1/2 shares represented by certificates numbered 7 and 9. The stub of certificate No. 12 shows the issuance of certificate No. 12 as a transfer from United to Amusement of 111 1/2 shares represented by certificate No. 11. No consideration was paid for these transfers and they were merely a part of the "mechanics" or formalities to carry out the deal and permit Amusement, as apparent *42 stockholder, to cause the dissolution of Avenal and the distribution of its assets. Each certificate of stock of Avenal provides on its face as follows: "transferable only on the books of the Corporation by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed." The statement by H. V. Harvey in the minutes that Amusement owned and held all the stock of Avenal was based on the issuance of certificate No. 12. B. A. Vecchiarelli signed an assignment and power of attorney dated July 15, 1938 purporting to transfer to United in consideration of the sum of $29,000, receipt of which was acknowledged therein, 111 1/2 shares of stock of Avenal evidenced by certificates numbered 7 and 9 and constituting E. H. Emmick, president, or L. S. Hamm, secretary of United, as his attorney-in-fact to cause the transfer thereof on the books of the corporation. This assignment was delivered in escrow to Title Insurance on July 15, 1938, together with the written resignation of Vecchiarelli as vice-president and director of Avenal, heretofore referred to, and letter of instruction under same date addressed to Title Insurance, as follows: Will you kindly refer *43 to your Applications Nos. 94061. 94062 and 94063 which relate to certain real property located at Coalinga and Avenal, California. As a part of the escrow which will be established with you with respect to the acquisition of said property by United California Theatres. Inc., I am handing you herewith an "ASSIGNMENT AND POWER OF ATTORNEY", signed by myself and bearing even date herewith, together with my resignation as an officer and director of Avenal Theatre Company. You are hereby authorized and directed to deliver these instruments to the order of United California Theatres, Inc., upon their paying to you the sum of $29,000.00 with instructions that same be delivered to me. You are authorized to deduct from said sum of $29,000.00 the amount of $350.00 which you will pay over to L. S. Hamm, No. 713 Loew's Warfield Building, San Francisco, California, upon his filing with you, for delivery to me, his receipt for said amount as being in full of all attorney's fees and costs with respect to the transaction to which this letter relates. In the event the matter cannot be closed within ten days from the date of your receipt of this letter, you will consider these instructions void and *44 will return to me the papers handed you herewith. The assignment of Vecchiarelli's stock was not delivered to United prior to the delivery of it to Title Insurance and was not delivered by United until on or about July 19, 1938, when released by Title Insurance to United pursuant to instructions of Vecchiarelli. As appears from the minutes of a meeting of the four directors of Avenal, held on July 12, 1938, the president, H. V. Harvey, reported that he, together with the secretary, R. W. Harvey, had executed and filed a certificate of elections of Avenal to dissolve. A writing wherein and whereby Amusement assumed all the indebtedness of Avenal was read and resolutions authorizing the distribution of all assets of Avenal to Amusement, and authorizing the president and secretary of the company to execute and deliver all necessary deeds and conveyances, and authorizing the filing of the certificate of final dissolution after the execution and delivery of such deeds and conveyances were adopted. The certificate of election to wind up and dissolve Avenal was filed in the office of the Secretary of State of California on July 12, 1938. The three Harveys and their respective wives and *45 United executed a written agreement dated July 16, 1938, in which the Harveys agreed to sell and United agreed to buy the three theatre properties, name, good will and business thereof, together with the furniture and fixtures therein, for $36,499.66, plus adjustments, if any, on account of the proration of rents, insurance premiums and certain prepaid expenses, subject to existing indebtedness of $54,500.34. The agreement further provides, inter alia, that United shall immediately deposit with Title Insurance the base purchase price in cash; that the Harveys shall immediately execute and deliver to Title Insurance good and sufficient deeds and bills of sale and assignments of leases, which shall be delivered by Title Insurance to United upon payment of the purchase price; that United assumes payment of the existing indebtedness, as shown by a statement attached to the contract; that the Harveys warrant and represent that the properties sold were free of all liens, encumbrances, liability or lawful claims and agree to pay promptly any claims or liabilities other than, or in excess, of those listed in the statement attached, and that the transaction be closed if practicable at *46 ten o'clock on the morning of Sunday, July 17, 1938. On July 16, 1938, Title Insurance received a letter of instructions of the same date, signed by the three Harveys, inclosing various deeds conveying (1) certain real property in Coalinga from Amusement and Vecchiarelli to Avenal, (2) certain real property in Avenal from Avenal to Amusement, (3) the Avenal property from Amusement to the Harveys, (4) certain real property in Coalinga from Avenal to Amusement, (5) the Coalinga property from Amusement to the three Harveys, (6) the Avenal property from the Harveys and respective wives to United, and (7) the Coalinga property from the Harveys, and respective wives to United, all except the first deed being dated July 16, 1938, (8) bill of sale dated July 16, 1938, covering all personal property located in motion picture theatres, located at Avenal and Coalinga, from Harveys to United, five leases and assignments thereof to United, and a letter dated July 16, 1938 signed by Amusement, authorizing the Bank of America to deliver to United all stock certificates held by it for the benefit of Amusement under the escrow established September 30, 1937. The letter of instructions requested Title *47 Insurance to have deeds numbered 1 to 5, inclusive, recorded and instructed Title Insurance to deliver the documents enclosed to United "when you have received from that corporation and are prepared to pay over to us the sum of $34,499.66," less certain enumerated expenses including $300 payable to Hamm as attorney fees. On July 19, 1938, Title Insurance received a letter of instructions dated July 16, 1938, from United inclosing two checks in the respective amounts of $29,000 and $36,499.66. The instructions of United in such letter pertaining to the check of $29,000, are as follows: 1. We are handing you herewith our check for $29,000.00 payable to yourselves and vouchered as being "In Full of Payment to B. A. Vecchiarelli for his Stock and Interests in Avenal Theatre Company". When the entire transaction to which this letter relates may be closed in accordance with the instructions herein contained, you may deliver the said sum to B. A. Vecchiarelli upon his filing with you, for delivery to the undersigned, his "ASSIGNMENT AND POWER OF ATTORNEY", an unsigned copy of which is hereunto attached, together with an escrow letter to Bank of America, an unsigned copy of which is likewise *48 attached, and Mr. Vecchiarelli's written resignation as a director and vice-president of Avenal Theatre Company, which resignation is to be dated July 1st, 1938. Such letter also contains the following instruction: 4. The Vecchiarelli transaction and the Harvey transaction are part of the same deal and neither one may be closed without the other. The deeds conveying the theatre properties from Avenal through Amusement and the Harveys to United were recorded simultaneously in proper order on July 19, 1938, and until then such properties of record stood in the name of Avenal. Title Insurance delivered a check in the amount of $29,000 to Vecchiarelli on or about July 21, 1938. Vecchiarelli did not relinquish the management of the theatres at Coalinga until he had received the check. A check in the amount of $36,499.66 was delivered to the Harveys by Title Insurance on July 21, 1938 and by them turned over to Amusement. Vecchiarelli signed a letter of instructions dated July 15, 1938, addressed to the Bank of America, authorizing that bank to deliver to United certificates numbered 7 and 9 of Avenal, but not until the amount unpaid under the escrow established September 30, 1937, *49 had been fully paid and discharged. This letter was received by the bank on July 29, 1938. The balance of the $10,000 payable under the escrow agreement of September 30, 1937, or $2,950.47, was paid by United to the Bank of America at San Francisco on July 29, 1938. This was one of the liabilities listed in the statement attached to the agreement on July 16, 1938, between the Harveys and United. Certificates numbered 6 and 7 were delivered to Hamm on August 1, 1938, and subsequently certificates numbered 8 and 9 were also released upon payment of the balance due the Bank of America at Avenal. A certificate of final dissolution of Avenal was executed by its four directors on July 28, 1938, and filed with the Secretary of State of California. The foregoing described transactions, while in form a dissolution of Avenal and distribution of its assets to its purported sole stockholder prior to the transfer thereof to United, were in substance one transaction, viz., a transfer in behalf of Avenal of its assets in consummation of a sale thereof to United. Opinion The respondent contends that the transfer of the assets of Avenal to United, by way of a purported sale of the stock of Vecchiarelli *50 to United and the distribution of its assets to Amusement, as sole stockholder, was in substance a sale of all its assets by Avenal to United and, hence, Avenal is liable for the tax on the profits realized on such sale. The petitioners contend that Avenal could not and did not make a sale of its assets to United but dissolved voluntarily and distributed its assets to its stockholders, that United acquired one-half of Avenal assets in liquidation of its stock purchased from Vecchiarelli and the other half by purchase from Amusement through the Harveys which had received the assets in liquidation of Avenal stock held by it. The petitioners' contention that Avenal could not and did not make a sale is based upon the grounds that Vecchiarelli refused to do anything except sell his stock and that Avenal could not under section 343 of the Civil Code of California[1] sell its assets and that it did not sell its assets because it entered into no negotiations or agreement to sell them but distributed its assets in kind to its sole stockholder. *51 Avenal had only two stockholders each holding the same number of shares. H. V. Harvey testified that Avenal had only two directors for the reason that Vecchiarelli wanted an equal representation with Amusement on the board. The inference to be drawn from these circumstances was that Avenal because of Vecchiarelli's purported refusal to do anything but sell his stock was therefore unable to legally transfer or dispose of its assets by sale thereof to United. The minutes of the meeting of the board of directors of Avenal held on July 1, 1938, show that Vecchiarelli signed the waiver of notice and consent to meeting and that Avenal had three directors, H. V. Harvey, R. W. Harvey and Vecchiarelli. At that meeting Hamm was elected to take the place supposedly vacated by Vecchiarelli and another director was elected so that thereafter there were four directors until Avenal was dissolved. The election of the fourth director is not explained of record. Counsel for petitioner states that the Articles authorized three directors. The evidence shows that there was some disagreement between the Harveys and Vecchiarelli, but that neither made any attempt to buy the stock of the other. Hamm testified *52 that the three Harveys were men of considerable financial responsibility. There is no evidence that Vecchiarelli refused to participate as a director or stockholder in the sale of the assets of Avenal to United. There is no evidence showing that Vecchiarelli discussed the matter with Hamm. Hamm testified that Jacobs came to his office and told him that "Amusement had signified their willingness to sell their half of these theatres," but he could not make a "satisfactory deal" with "Vechiarelli" and asked him whether he could bring him to Hamm's office so that Hamm could discuss the deal with him, that a day or two later Jacob brought in the "father of Vecchiarelli", who spoke only broken English and was rather difficult to understand, but who made it very clear to Hamm that he would sell nothing but the stock. The father of Vecchiarelli was not a director of Avenal or a stockholder of record and had no right to sell anything except whatever right he may have had in the stock held by his son. Vecchiarelli testified as a witness for petitioners but he did not testify that he refused to cooperate as a stockholder and director with respect to the offer of United. He testified that "we *53 just couldn't seem to get along with Mr. Harvey" and "we advised Mr. Jacobs to make some connections for the sale of our interest", that he, Vecchiarelli, was down in Coalinga when the transaction was made, that he didn't know what was going on, that he did not know that United was acquiring title to the theatre properties, that he did not know that Harvey was also conducting negotiations for the sale of his interest in Avenal, and that all he knew was that they were interested in his stock. If Vecchiarelli did not know that United had offered to buy the theatres of Avenal and supposed it had offered to buy his stock only, there is no basis for the claim of petitioners that it was impossible for Avenal to sell or transfer its assets because of Vecchiarelli's attitude. No refusal to sell anything except his stock or to cooperate with Amusement as director and stockholder of Avenal can be attributed to him if he had no knowledge that United wanted to buy the theatres or that Amusement was willing to dispose of such assets and dissolve Avenal. The evidence indicates that Vecchiarelli, despite his evidence to the contrary, knew of the entire transaction and the purpose to be accomplished. *54 In his offer to Jacobs, dated June 22, 1938, the provision with respect to the assumption of the liabilities of Avenal by United is crossed out and initialed by him and presumably his father, R. Vecchiarelli, and he agreed to pay a share of the cost of dissolving Avenal, not in excess of $50 plus attorney fees in the amount of $300. The letter of instructions to Title Insurance signed by him refers to the transfer of the theatres of Avenal to United. When the latter was called to his attention on cross-examination he testified that he did not remember signing the letter. His testimony was vague and indefinite. He also testified that he did not know his Avenal stock was pledged with the Bank of America although he signed the agreement by which it was pledged and the letter addressed to the Bank instructing it to release the certificates to United upon payment of the amount unpaid under the escrow agreement of September 1937. The testimony of H. V. Harvey was vague, inconsistent and evasive, particularly upon cross-examination. The evidence is clear, however, that H. V. Harvey knew that United wanted to acquire the properties of Avenal and not its stock from its stockholders. He discussed *55 the matter with Hamm and asked him if he knew of any way the deal could be worked out so that United would purchase assets and Vecchiarelli would sell stock. Hamm had been specifically instructed by the president of United that United would buy the theatres and not the stock. Undoubtedly R. W. Harvey was fully informed as well. Saul, the broker acting for United, knew that United wanted to acquire only the properties. He had advised Hamm to that effect and there is no evidence that he advised Jacobs, the broker who negotiated with the Harveys and Vecchiarelli, otherwise. Hamm, acting as attorney for United, Amusement and Vecchiarelli, the latter two being the sole stockholders of Avenal, set up the mechanics for the acquisition of Avenal's assets at the price offered by United. The plan involved a series of transactions including the dissolution of Avenal and distribution of its assets, to give the appearance of United acquiring the assets of Avenal partly in liquidation through acquisition of Vecchiarelli's stock and partly by purchase from the stockholders of Amusement, to whom they were to be distributed by Amusement after they were acquired in liquidation of Avenal. The plan necessitated *56 the use of Vecchiarelli's stock as fully as a direct transfer from Avenal to United. Routing the transfer of the assets through the stockholders of Avenal simply made them a conduit to accomplish the purpose sought, i.e., the transfer of Avenal's assets to United. The only persons United could negotiate with for the purpose of purchasing the assets of Avenal were the Harveys and Vecchiarelli. It could not deal with Avenal otherwise. The minutes of Avenal disclose no refusal on the part of Avenal to accept the offer of United. Cf. . In that case an offer was made to the company to purchase certain leasehold interests of the company which its directors refused to sell to the offeror or to any one else. Thereafter the company distributed the leasehold interests to its stockholders as a liquidating dividend and reduced its capital stock by 60 percent. The stockholders after receiving such interests negotiated for and sold such interests. The company continued in business with its reduced capital. The court in holding that the corporation was not taxable on the profits derived by the stockholders from the sale *57 of such leasehold interests stated as follows: Here the record shows no fraud, sham, or subterfuge, or use of mere form to hide the substance of the real transaction. At least three of the four directors of Avenal who participated in the meeting held on July 1, 1938, and subsequent meetings knew that United had offered to buy the assets of Avenal and they knew that the minutes and documents had been prepared for the purpose of selling such assets to United and that United did not want anything but such assets. Vecchiarelli did not intend to transfer his stock until he received the $29,000 cash and he did not receive the cash until on or about July 21, 1938, when the entire deal was closed. Neither did he intend to resign as director or give up his employment with the company until he had received the cash. This was known to the directors of Avenal. The resolutions terminating the employment of Vecchiarelli and his authority to sign checks, etc., made such termination effective as of July 14, 1938, and Vecchiarelli remained in charge of the theatres in Coalinga until he had received his check from Title Insurance. The new directors acted on the assumption that Vecchiarelli had resigned *58 as a director as of July 1, 1938 and that his stock had been transferred as of that date. A certificate purporting to be for his stock was issued to United on July 1, 1938. All this was done knowing that the resignation had not been presented at the directors' meeting on July 1, 1938 and that his stock had not been surrendered or transferred. Vecchiarelli did not deliver the certificates or the assignment of his stock to United but he delivered the assignment to Title Insurance with specific instructions not to deliver it to United until it had received the $29,000 and was ready to pay it to him. Where a sale is expressly for cash or cash on delivery, title does not pass until the cash is paid. . The price determined was a price fixed by United for the properties, consisting of cash and the assumption of the indebtedness of Avenal. It was not a price for the purchase of the stock or any part thereof. That it was paid in two checks is immaterial. That the amounts paid to the Harveys and Vecchiarelli were not equal is not a determining factor, particularly under the circumstances *59 herein, where the Harveys on account of their financial responsibility guaranteed to pay any indebtedness in excess of the liabilities assumed by United. There is no evidence that the Harveys were not required to pay some liabilities. The evidence shows that the method employed was specifically planned by Hamm so as to meet the offer of United to purchase the assets of Avenal and not its stock. All the transactions were carried out with that purpose in view. Title to the properties remained in Avenal until the day before July 17, 1938, on which day the properties were to be turned over to United. At the time the assets of Avenal were transferred to Amusement they were at the same time transferred to the Harveys and by them to United, all as a part of the same transaction. The deeds to Amusement and from it to the Harveys were executed solely for the purpose of transferring title from Avenal to United. The instructions from United to Title Insurance expressly state that the Vecchiarelli transaction and the Harvey transaction are part of the same deal and neither one may be closed without the other. From that instruction it may reasonably be inferred that United did not consider any *60 deal made with Vecchiarelli closed prior to that time or that it had intended to or did acquire title to this stock. If it had, it would have been obligated to pay the $29,000 to Vecchiarelli whether or not the so-called Harvey transaction was closed. This clearly was not intended by United. Article 22(a)-21 of Regulations 101 provides as follows: ART. 22 (a)-21. GROSS INCOME OF CORPORATIONS IN LIQUIDATION. When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. * * * Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. Similar provisions in prior Regulations have been approved and given effect. ; *61 . The facts in such cases are analogous to the situation herein except that it appears that therein the officers or directors of the corporation involved acted in behalf of the corporation to negotiate the sale of the corporate assets and business, and trustees were appointed by the stockholders to act as liquidating trustees with full power of sale. Herein the corporation was not permitted to act. Under the circumstances herein, although not specifically appointed, Amusement and the Harveys acted as liquidating trustees for the corporation. The conveyance of the assets to Amusement and by it to the Harveys was a matter of form adopted to accomplish the purpose intended at the outset. The transfer of the assets by Avenal to Amusement and by Amusement to the Harveys was intended to be and was a temporary transition, the only purpose of which was to vest in United the assets of Avenal in accordance with the offer of United for $120,000. During the process of transition Vecchiarelli was the owner of one-half the stock of Avenal. If upon the receipt of the assets from Avenal, Amusement and the Harveys held one-half *62 thereof in trust, as contended by petitioner, the beneficiary would be Vecchiarelli by reason of his ownership of one-half the stock rather than United as United had not compiled with the conditions under which it was entitled to the stock. At best it had an option only to acquire the stock on the expressed conditions to be performed by it, among which was payment therefor in full which, as we have stated, did not occur until after the assets had been completely vested in United. The respondent claims that the transfer of the assets of Avenal was in substance a transfer by Avenal to United. We agree with him. The burden of proof was on petitioners to show that the assets of Avenal were transferred in good faith to Amusement. Evidence of a transfer to Amusement and the Harveys as a conduit for the passage of the assets to United does not meet this burden. The petitioners also argue that if it be determined that Avenal sold its assets to United then the Commissioner erred in including the $29,000 paid to Vecchiarelli in the purchase price in computing the profit realized by Avenal. We have held that the deal with Vecchiarelli was not a separate transaction. The amount received by *63 him was merely his distributive share of the assets of Avenal which at the time of distribution consisted of the proceeds of the sale of its assets to United. The petitioners argue that , is direct authority allowing United and Harvey in advance of the closing of the escrow to treat Vecchiarelli's stock as already transferred in order to break the stalemate resulting from Vecchiarelli's alleged refusal to authorize any corporate action by Avenal. There is no evidence that United notified Vecchiarelli prior to the use of his stock for the purpose of dissolving Avenal, of its acceptance of the option executed by Vecchiarelli binding itself to pay the $29,000 and no evidence that a transfer of title to the stock was intended by Vecchiarelli prior to the payment to him of the $29,000. , one of the cases cited by petitioner, holds that while under some circumstances title to shares of stock may pass without delivery of the certificates, the usual and ordinary course of business *64 is that a contract for sale of shares of stock is executed by indorsement and delivery of the certificates and that in construing a contract between businessmen due weight must be given to the businessmen's point of view. As above stated herein, the evidence fails to show the existence of a contract of sale between Vecchiarelli and United. There was an option only. It appears further there was no intent to transfer title prior to the payment and no delivery of the certificates and no intent to deliver on the part of Vecchiarelli an assignment thereof to United prior to the receipt of the $29,000. Under such circumstances the stock can not be treated as already transferred as was done in Gendron Wheel Co. case, supra, and other cases on this point cited by petitioner. Therein it clearly appeared that there was a contract for a sale of stock, a sale of stock was intended at the outset and the sale of stock was consummated. Herein the purpose of United was to purchase the assets of Avenal and not its stock and the method of transfer was adopted to meet that offer. The intent and purpose to be achieved are of greater weight than the form or method by which such purpose is carried *65 out. Decisions will be entered for the respondent. Footnotes
1. Civil Code of California
343. Sale or Transfer of Entire Assets. No corporation may sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its property and assets except under section 344 of this title [Relates to corporate mortgages and not applicable herein], unless under authority of a resolution of its board of directors and with the approval of the principal terms of the transaction and the nature and amount of the consideration by vote or written consent of shareholders entitled to exercise a majority of the voting power of such corporation. Such approval may be given before or after the adoption of the resolution by the board of directors, and before or after any such transfer or disposition. * * *↩